No. 03-788

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 80N

IN RE THE MARRIAGE OF

SAIYIN HAGGERTY,

           Petitioner and Respondent,

    and

THOMAS B. HAGGERTY,

           Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and for the County of Gallatin, Cause No. DR 00-170
                      The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Dana C. Christian, Attorney at Law, Livingston, Montana

        For Respondent:

            Rienne H. McElyea, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

Submitted on Briefs:  April 7, 2004

Decided:  March 29, 2005

Filed:

_____
                      Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Thomas Bret Haggerty (Bret) appeals two orders from the District Court for the Eighteenth Judicial District, Gallatin County, denying his Motion to Amend Parenting Plan and his Motions for Contempt. We affirm.

¶3 We address the following issues on appeal:

¶4 1. Whether the District Court erred when it denied Bret's Motion to Amend Parenting Plan.

¶5 2. Whether the District Court erred when it denied Bret's Motions for Contempt.

¶6 3. Whether the District Court erred when it denied Bret his attorney's fees and costs.

## Factual and Procedural Background

¶7 Saiyin Haggerty (Saiyin) filed for dissolution of the parties' marriage on May 10, 2000. Bret and Saiyin were married on August 31, 1996, in Bozeman. They have two young children, T.J., who was born on December 25, 1996, and Sam, who was born on July 3, 2000, after Saiyin filed for dissolution. Saiyin also has a son, Nan, from a previous relationship.

¶8      On September 1, 2000, Saiyin filed with the District Court her Notice of Intent to Move. The following month, she moved to Lynnwood, Washington with the children.

¶9      The parties' signed their Property Settlement Agreement and their Final Parenting Plan on August 24, 2001, and, on October 5, 2001, the District Court entered a Final Decree of Dissolution of Marriage, incorporating the parties' Property Settlement Agreement and Final Parenting Plan. The parenting plan provided that the children were to reside with Saiyin in Washington, but Bret was to have various holidays with the children and the children would spend time with Bret in Bozeman during their summer vacations. Because Sam was only a year old at the time the parties divorced, the parenting plan called for gradual, phased-in visitation with Bret.

¶10      On April 3, 2003, Bret filed, through counsel, a Motion to Amend Parenting Plan to, among other things, clarify alleged ambiguities in the existing parenting plan and to increase his contact with his children. Saiyin filed her Counter-Motion to Amend Parenting Plan and for Modification of Child Support on May 2, 2003.

¶11      Thereafter, Bret elected to proceed *pro se* and he filed three additional motions: (1) an Emergency Motion to Allow Minor Child Summer Visitation wherein Bret requested that he be allowed to deviate from the parenting plan and have his youngest son, Sam, accompany Sam's older brother, T.J., during T.J.'s month-long summer visitation with Bret in Bozeman; (2) a Motion for Contempt of Court wherein Bret contended that Saiyin refused to provide him with copies of her employer's dependent health coverage information regarding the children; and (3) a Motion for Contempt of Court and for Interference with

3

Parent-Child Contact wherein Bret contended that Saiyin interfered with his telephone contact with the children in violation of the parenting plan. Saiyin responded to Bret's motions on July 8, 2003, arguing that Bret calls his children almost daily and that his constant phone calls and his motions are merely a means of harassing her.

¶12 On September 18, 2003, the District Court denied both parties' motions to amend the parenting plan on the grounds that there had not been a change in circumstances of the children that necessitated a modification of the parenting plan to serve the children's best interests. The court did not find a need for modification based on any of the § 40-4-219, MCA, factors or any of the best interest factors of § 40-4-212, MCA. The court granted Saiyin's request for a recalculation of child support based on information that one of the children had changed residences. However, the court subsequently retracted its order regarding child support upon learning that the child that changed residences was Saiyin's child from a previous relationship and not one of the parties' two children. In a separate order also filed September 18, 2003, the District Court denied Bret's motions for contempt without providing any basis for its determination.

¶13 Bret appeals the District Court's orders denying his Motion to Amend Parenting Plan and his Motions for Contempt.

**Standard of Review**

¶14 Our standard of review of a district court's findings regarding the modification of a parenting plan is whether those findings are clearly erroneous. *Jacobsen v. Thomas*, 2004 MT 273, ¶ 10, 323 Mont. 183, ¶ 10, 100 P.3d 106, ¶ 10 (citing *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, ¶ 9, 46 P.3d 49, ¶ 9). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *In re Estate of Kindsfather*, 2005 MT 51, ¶ 15, ___ Mont. ___, ¶ 15, ___ P.3d ___, ¶ 15 (citing *Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7).

¶15 When the findings upon which a decision is based are not clearly erroneous, we will reverse a district court's decision regarding modification of custody only when an abuse of discretion is clearly demonstrated. *Jacobsen*, ¶ 10. An abuse of discretion occurs when the district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Jacobsen*, ¶ 10 (citing *In re Marriage of Robison*, 2002 MT 207, ¶ 15, 311 Mont. 246, ¶ 15, 53 P.3d 1279, ¶ 15).

¶16 Our standard of review of a district court's conclusions of law in a post-divorce proceeding is whether the court's interpretation of the law is correct. *Schmitz v. Engstrom*, 2000 MT 275, ¶ 9, 302 Mont. 121, ¶ 9, 13 P.3d 38, ¶ 9 (citations omitted).

**Issue 1**.

¶17     *Whether the District Court erred when it denied Bret's Motion to Amend Parenting Plan.*

¶18     Bret claims that his detailed allegations coupled with Saiyin's "lack of denials" and "vague 'responses'" make the District Court's plenary denial of hearings and motions completely unreasonable under any standard.  Bret also contends that by denying all of his motions as well as mediation, the court "blocked all formal and informal avenues to resolution of obvious conflicts."

¶19     Under § 40-4-219, MCA, a court may, in its discretion, amend a parenting plan if "it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child."  Thus, a finding of changed circumstances is a jurisdictional prerequisite, and without such a finding, a district court may not modify an existing custody arrangement. *Oehlke*, ¶ 12 (citations omitted).

¶20     Moreover, a party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof.  *Oehlke*, ¶ 17.  *See also In re Marriage of Johnson* (1994), 266 Mont. 158, 166, 879 P.2d 689, 694 ("party requesting modification under § 40-4-219, MCA, bears a heavy burden because the statute's policy is to 'preserve stability and continuity of custody for the children.'").

6

¶21    In the case *sub judice*, the District Court determined that the jurisdictional prerequisites for modifying the parenting plan under § 40-4-219, MCA, were not met. We agree. Bret filed his Motion to Amend Parenting Plan on the grounds that the plan was ambiguous in two areas, that Saiyin had failed to provide him with health insurance information, and that Saiyin had frustrated telephone contact between Bret and the children. Bret also based his motion on his desire to spend more time with his children. However, none of these allegations indicate a change in circumstances of the children necessitating modification.

¶22    Moreover, while Bret filed several motions with the District Court, he failed to support any of his motions with an affidavit.

> **Affidavit practice.** (1) Unless the parties agree to an interim parenting plan or an amended parenting plan, the moving party seeking an interim parenting plan or amendment of a final parenting plan *shall submit*, together with the moving papers, *an affidavit setting forth facts supporting the requested plan or amendment* and shall give notice, together with a copy of the affidavit, to other parties to the proceeding, who may file opposing affidavits. *The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits,* based on the best interests of the child, in which case it shall set a date for hearing on an order to show cause why the requested plan or amendment should not be granted. [Emphasis added.]

Section 40-4-220(1), MCA. As Saiyin pointed out in her brief on appeal, merely signing one's motion does not amount to a verified complaint or an affidavit. "An 'affidavit' is a written declaration under oath, made without notice to the adverse party." Section 26-1-1001, MCA; *Sheehy v. Ferda* (1988), 235 Mont. 63, 67, 765 P.2d 722, 724; *In re Marriage of Stout* (1985), 216 Mont. 342, 347-48, 701 P.2d 729, 732. The crucial component of an

7

affidavit is a declaration that statements made therein are made *under oath*. *Continental Oil Co. v. Jameson* (1917), 53 Mont. 466, 468, 164 P. 727, 727. This declaration is missing from Bret's motions.

¶23 Bret's repeated motion filing is exactly the type of conduct § 40-4-220, MCA, was meant to discourage. The Code Commissioners' Note to § 40-4-220, MCA, explains the rationale behind this statute:

> This section establishes a procedure for seeking temporary custody or a modification of a custody decree by motion supported with affidavits. *The procedure is designed to result in denial of the motion without a hearing unless the court finds that the affidavits establish adequate cause for holding a hearing.* The procedure will thus tend to discourage contests over temporary custody and prevent repeated or insubstantial motions for modification. [Emphasis added.]

¶24 In *In re Marriage of Allison* (1994), 269 Mont. 250, 267, 887 P.2d 1217, 1227-28, this Court refused to create an exception to the affidavit requirement and held that it was improper for the district court to grant a motion to modify a custody arrangement when the moving party failed to file a supporting affidavit with his motion. Similarly, in *In re Marriage of Lundby*, 1998 MT 122, ¶ 13, 289 Mont. 74, ¶ 13, 959 P.2d 485, ¶ 13, this Court held that if the requirements of § 40-4-220(1), MCA, are not met, a district court has no jurisdiction to consider modifying custody.[1]

---

[1] Section 40-4-220, MCA, was amended in 1997 and again in 1999, but the 1995 version of § 40-4-220(1), MCA, relied on in *Allison* and *Lundby* is, in substance, the same as the current statute.

¶25     Accordingly, because Bret failed to support any of his motions with an affidavit as required by § 40-4-220(1), MCA, and thereby, failed to provide substantial credible evidence to satisfy the jurisdictional prerequisite in § 40-4-219, MCA, we hold that the District Court did not err when it denied Bret's Motion to Amend Parenting Plan.

**Issue 2.**

¶26     *Whether the District Court erred when it denied Bret's Motions for Contempt.*

¶27     Bret argues on appeal that it was arbitrary and clearly erroneous for the District Court to deny his motions for contempt without a hearing. Although contempt orders by a district court are final and generally not reviewable by this Court, we make exceptions in marriage dissolution proceedings. *In re Marriage of Baer*, 1998 MT 29, ¶ 42, 287 Mont. 322, ¶ 42, 954 P.2d 1125, ¶ 42 (citations omitted). However, our review is limited to whether the district court acted within its jurisdiction and whether the evidence supports the findings. *Baer*, ¶ 42.

¶28     We noted in *Baer*, that a district court has the responsibility to enforce its own orders and that a district court's power to inflict punishment by contempt is necessary to preserve its dignity and authority. *Baer*, ¶ 45. Consequently, where a district court has found that there is no need to enforce compliance with its order or that the actions of a party do not present a challenge to its dignity and authority, we will not reverse the court's decision absent a blatant abuse of discretion. *Baer*, ¶ 45.

¶29     In its September 18, 2003 order denying the parties' motions for contempt, the District Court did not provide any basis for its decision. However, in reviewing the record in this

9

case, we find nothing that would lead us to believe that the District Court committed a blatant abuse of discretion in denying Bret's motions.

¶30  Accordingly, we hold that the District Court did not err when it denied Bret's Motions for Contempt.

**Issue 3**.

¶31  *Whether the District Court erred when it denied Bret his attorney's fees and costs.*

¶32  Bret argues on appeal that the District Court erred in denying him his attorney's fees and costs, however, Bret neither requested attorney's fees and costs in the court below, nor did the court make any determination in its orders regarding attorney's fees and costs for either party.  Moreover, all but the first of Bret's motions were filed *pro se*, thus Bret did not incur any attorney's fees for filing his *pro se* motions in the District Court.

> We "generally will not address either an issue raised for the first time on appeal or a party's change in legal theory on appeal because 'it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.'"

*Oehlke*, ¶ 30 (citation omitted).

¶33  Furthermore, Bret contends that because Saiyin's legal positions are "without substantial or reasonable grounds," he should receive damages on appeal.  In support of his position, Bret relies on Rule 32, M.R.App.P., which provides as follows:

**Rule 32. Damages for appeal without merit.**

If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

Since Bret was the party that filed this appeal, Rule 32 does not support his request for damages from Saiyin.

¶34    Accordingly, we will not consider Bret's request for attorney's fees or for damages.

¶35    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE